# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER JACOBSON JOHNSON,<br><br>　　　　　　　　　　Petitioner,<br>　vs.<br><br>JAMES A YATES, Warden, et al.,<br><br>　　　　　　　　　　Respondent. | CASE NO. 09CV2073 JLS (BGS)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION; (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND (3) DENYING CERTIFICATE OF APPEALABILITY**<br><br>(ECF Nos. 1, 44) |

　　　Presently before the Court is Magistrate Judge Bernard G. Skomal's report and recommendation ("R&R") advising the Court to deny Petitioner Peter Jacobson Johnson's ("Petitioner") petition for writ of habeas corpus ("Petition"). (R&R, ECF No. 44) Also before the Court are Petitioner's objections to the R&R. (Obj., ECF No. 58) After consideration, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the R&R, and **DENIES** the Petition.

## BACKGROUND

　　　Magistrate Judge Skomal's R&R contains a thorough and accurate recitation of the factual and procedural background underlying the instant Petition. (R&R 1–4, ECF No. 44) This Order incorporates by reference the factual and procedural background as set forth in the R&R.

　　　On September 21, 2009, Petitioner filed the instant Petition asserting four grounds for relief, as summarized in the R&R:

> First, Johnson claims that his trial counsel rendered ineffective assistance by: (a) disrupting the *Marsden* hearing; (b) being unprepared for trial; (c) failing to challenge certain witness testimony; (d) failing to make certain arguments; and (e) failing to object to the prosecutor leading witnesses. Second, Johnson claims that the prosecutor committed misconduct by: (a) knowingly soliciting perjured

>  testimony.  Third, he contends that the prosecutor solicited false evidence and misstated the facts throughout trial.  Last, Johnson contends that the trial court violated his constitutional rights by excluding exculpatory evidence.

(*Id.* at 4 (citing Pet. 9–24,[1] ECF No. 1))  On December 30, 2009, Respondent answered the Petition, arguing that Petitioner had not effectively exhausted his claims and that his claims are not colorable.  (Answer 3–15, ECF No. 13)  Petitioner filed a traverse to Respondent's answer on December 6, 2010.[2]  (Traverse, ECF No. 33)  On March 22, 2012, Magistrate Judge Skomal issued an R&R advising the Court to deny the Petition.  (R&R, ECF No. 44)  Petitioner objected to the R&R on July 9, 2012.  (Obj., ECF No. 8)

## LEGAL STANDARD

**1.  Review of the Report and Recommendation**

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's R&R.  The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz,* 447 U.S. 667, 673–76 (1980).  However, in the absence of a timely objection, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

**2.  Cognizable Claim for Relief**

Under federal law, a prisoner seeking relief on claims related to imprisonment may file a petition for habeas corpus pursuant to 28 U.S.C. § 2254.  A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal intervention in state court proceedings

---

[1] Pin cites to the Petition and to Petitioner's objections to the R&R utilize the page numbers assigned by CM/ECF.

[2] The document was filed nunc pro tunc to September 23, 2010, but was not docketed as a traverse until December 6, 2010.  (*See* ECF Nos. 29–33)

is only justified when there are errors of federal law. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989). Federal habeas courts are bound by a state's interpretation of its own laws. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas petitions filed after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997). AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A federal court can grant habeas relief only when the result of a claim adjudicated on the merits by a state court "was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court authority, or (2) "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (citation omitted). An "unreasonable" application of precedent "must have been more than incorrect or erroneous"; it "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

**ANALYSIS**

The Court liberally construes the pro se Petitioner's objections and reviews de novo those portions of the R&R that are objected to, proceeding on a claim-by-claim basis.[3]

**1. Ineffective Assistance of Counsel Claims**

Petitioner claims he received ineffective assistance of counsel by his trial counsel, in violation of the Sixth Amendment. The Supreme Court's decision in *Strickland v. Washington*,

---

[3] Magistrate Judge Skomal found that Petitioner had fairly presented his federal claims to the California Supreme Court, concluding therefore that he had exhausted his claims. (R&R 7, ECF No. 44) Petitioner does not appear to object to this portion of the R&R, which was decided in his favor. (*See* Obj. 2–3, ECF No. 58 (indicating confusion but not disagreement with the R&R)) Having reviewed this portion of the R&R, the Court finds that the R&R is thorough, well reasoned, and contains no clear error.

466 U.S. 668 (1984), provides the clearly established federal law governing ineffective assistance of counsel claims. *See Williams v. Taylor*, 529 U.S. 362, 391 (2000) ("*Strickland* . . . provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims."); *Sims v. Brown*, 425 F.3d 560, 584 (9th Cir. 2005). Under *Strickland*, a petitioner's claim for ineffective counsel must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688; and (2) "deficiencies in counsel's performance [were] prejudicial to the defense," *id.* at 692. A court does not need to address both prongs of the *Strickland* test if the petitioner makes an insufficient showing on one. *Id.* at 697.

### A. Summary of the R&R's Conclusions

Magistrate Judge Skomal considered each of the asserted bases for ineffective assistance of counsel in turn. First, based on a review of the Reporter's Appeal Transcript, the R&R concluded that "[t]here is nothing in the record to indicate that the exchange between the trial judge and counsel took place in such a manner that the attorney sabotaged Johson's (sic) *Marsden* hearing," and that "counsel's behavior during the *Marsden* hearing was not deficient." (R&R 8, ECF No. 44) Second, as to counsel's alleged failure to prepare, the R&R determined that "there is nothing in the record suggesting that counsel lacked a strategic purpose for failing to challenge Detective Thwing's testimony, (*id.* at 9); that "counsel's decision not to further inquire into [Kitty] Dean's potentially inconsistent statements regarding Johnson's reason for disliking the victim falls within the wide range of reasonable professional assistance and tactical choice," (*id.* at 10); and that "there is nothing in the record suggesting that counsel lacked a strategic purpose for failing to challenge Detective Donaldson's testimony," (*id.* at 11). Third, the magistrate judge disposed of Petitioner's argument that his counsel was deficient failing to present certain arguments or evidence, reasoning that counsel's decisions were tactical ones and that Petitioner had not shown that there was a reasonable probability that the result of the proceeding would have been different absent these reasonable tactical choices. (*Id.* at 11–14) Fourth, the R&R did not find ineffective assistance of counsel based on counsel's alleged failure to object to leading questions because Petitioner "offers no evidence for his claim." (*Id.* at 14)

//

### B. Objections to the R&R's Conclusions

*(1)* Marsden *Hearings*

Petitioner asserts that there was not just one but two *Marsden* hearings, and that the R&R erred by not recognizing this. (Obj. 3, ECF No. 58)  A review of the R&R indicates that Magistrate Judge Skomal recognized that there were two *Marsden* hearings, (*see* R&R 8, ECF No. 44 (describing the August 8, 2006, *Marsden* hearing as "the first *Marsden* hearing")), though the R&R discussed only the first hearing in any detail.[4]

As to the first *Marsden* hearing, the Court **OVERRULES** Petitioner's objection to the R&R.  Apparently, Petitioner contests the Reporter's Appeal Transcript, arguing that "the record fails to show that counsel stood up and tried to cut [him] off numerous times." (Obj. 3, ECF No. 58)  Indeed, as the R&R concluded, the transcript from the *Marsden* hearing reveals no instances of trial counsel interrupting Petitioner during the hearing, and Petitioner was afforded an opportunity "to fully express his complaints about trial counsel," which "is all that is constitutionally required." *Otis v. Dobson-Davis*, 2010 U.S. Dist. LEXIS 116526, at *10 (E.D. Cal. Oct. 20, 2010).  Thus, the exhibit contradicts Petitioner's objection and the Court therefore disregards and overrules Petitioner's objection on this basis. *See Ramirez v. California*, 2009 U.S. Dist. LEXIS 126965, at *19 (C.D. Cal. Nov. 25, 2009) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)).

As to the second, September 5, 2006, *Marsden* hearing, Petitioner's ineffective assistance of counsel claim is premised on the judge's denial of the *Marsden* motion, rather than on trial counsel's alleged disruptions. (*See* Pet. 18, ECF No. 1); (Obj. 3, ECF No. 58 (noting that his motion was denied "even though [his] arguments were almost exactly like [the judge's] criteria demanded")  Indeed, Petitioner admits that he was able to "state [his] case" at the second hearing, contesting only the outcome: the motion was denied. (Obj. 3, ECF No. 58)  Although denial of a

---

[4] This is likely due, at least in part, to the fact that the Court does not have before it the transcript from the second *Marsden* hearing. Although Petitioner attaches a "[Proposed] Order Re: Application to Unseal *Marsden* Transcript" to his objections, (Obj. 4, ECF No. 58), the actual transcript was not submitted as a lodgment. Thus, the only portion of the transcript the Court has access to is the three pages Petitioner attached as an exhibit to his petition before the California Court of Appeal. (Resp't's Notice of Lodgment ("NOL") No. 9, at 30–33, ECF No. 14)

*Marsden* motion may implicate the Sixth Amendment right to counsel, *see Schell v. Witek*, 218 F.3d 1017, 1025–26 (9th Cir. 2000) (en banc), "[i]t is well-settled that 'conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Here, Petitioner conclusively states that his *Marsden* motion should have been granted based on "[t]he court's statement of what would warrant this motion to be granted." (Pet. 10, ECF No. 1) To be sure, Petitioner sets forth the basis for his motion—namely, the lack of preparation by his trial counsel—but because there is no specific reference to the trial court record the Court is unable to consider whether the motion was improperly denied. Based on what the Court has be for it[5] and in light of Petitioner's concession that he was able to state his case, the Court concludes that the denial of Petitioner's second *Marsden* motion does not provide a basis for habeas relief. *See Otis*, 2010 U.S. Dist. LEXIS 116526, at *10.

*(2) Failure to Prepare*

Next, Petitioner objects to the R&R's conclusions as to trial counsel's purported failure to prepare for trial. (Obj. 4–10, ECF No. 58) For the most part, Petitioner simply reiterates his general dissatisfaction with his counsel's level of preparedness, (*see id.*), but, read liberally, he does make several specific objections to the R&R, which the Court will address.

First, as to Petitioner's contention that trial counsel was ineffective for failing to challenge Detective Thwing's inconsistent testimony, Petitioner's objections clarify what specific testimony he believes Detective Thwing changed: his testimony regarding where Petitioner lived at the time of the murder. (*Id.* at 4) A review of the trial transcript demonstrates that trial counsel did cross-examine Detective Thwing as to this issue, however, (NOL No. 2, at 167, ECF No. 14), and moreover the Court agrees with Magistrate Judge Skomal that trial counsel's decision not to challenge Detective Thwing's testimony further was a tactical one entitled to some leeway. *See*

---

[5] A review of the available portions of the transcript from the second *Marsden* hearing shows that the trial court allowed Petitioner to air his grievances, (NOL No. 9, at 31, ECF No. 14), that the trial court made the appropriate inquiry into the "ultimate question" whether Petitioner was receiving "effective representation by counsel," (*id.* at 32), and that the trial court specifically considered concerns about counsel having adequate time to prepare for trial, (*id.* at 33). Ultimately, the trial court concluded that "what [he was] hearing [was] a disagreement on tactics as to how to approach the case," and that trial counsel's "representation has been effective." (*Id.* at 33)

*Reynoso v. Giurbino*, 426 F.3d 1099, 1113 (9th Cir. 2006).

Second, as to Petitioner's contention that trial counsel was ineffective for failing to challenge Kitty Dean's inconsistent testimony, Petitioner takes issue with the R&R's characterization of her testimony as "insignificant" and finding that the decision not to further challenge the testimony was a permissible tactical one. (Obj. 4, 6, ECF No. 58) According to Petitioner, "[t]here was more contradiction in her testimony" not discussed in the R&R. (*Id.* at 5) Specifically, Petitioner points out the following contradictions that were not challenged by his trial counsel: (1) Kitty Dean's testimony at trial regarding Petitioner's dislike of the murder victim contradicted the information she provided for the police report; (2) her testimony at trial regarding Petitioner attempting to sell her a gun contradicted the information she provided for the police report; (3) her testimony at trial that Petitioner "still pretty much looks the same," (NOL No. 2, at 149, ECF No. 14), when his appearance had in fact changed significantly over the intervening years; and (4) her testimony regarding where Petitioner "hung out" was inconsistent. (Obj. 6–8, ECF No. 58)

A review of the transcript demonstrates that trial counsel did cross-examine Kitty Dean as to her testimony on the first two topics, (NOL No. 2, at 150–54, ECF No. 14), though he did not impeach her with the police report Petitioner references.[6] Still, the Court agrees with Magistrate Judge Skomal that "counsel's decision not to further inquire into Dean's potentially inconsistent statements . . . falls within the wide range of reasonable professional assistance and tactical choice." (R&R 10, ECF No. 44) And the Court likewise concludes that trial counsel's decision not to impeach Kitty Dean on the collateral issues of Petitioner's appearance and hang out spots was a tactical one, which "would have had no effect on negating the proffered motive for the crime." (*Id.* (citing *Jones v. Ryan*, 583 F.3d 626, 636 (9th Cir. 2009)))

Third, as to Petitioner's contention that trial counsel was ineffective for failing to challenge Detective Donaldson's testimony regarding taking notes and recording conversations, Petitioner objects only to the portion of the R&R concerning the recorded conversations. (*See* Obj. 8–9, ECF

---

[6] In discussing the "police report" Petitioner cites to the Probation Officer's Report, which utilized various police reports as sources. (NOL No. 1, at 151–68, ECF No. 14) The Court does not have before it the actual police reports referenced in the Probation Officer's Report.

No. 58) Specifically, Petitioner argues that Detective Donaldson contradicted himself when he first described a phone call between himself and Petitioner as "my phone call"—meaning a phone call made *by* Detective Donaldson *to* Petitioner—and later testified that Petitioner had called him to explain why the beginning of the phone call had not been recorded. (*Id.* at 8) Upon the Court's own review of the trial transcript, however, the Court notes no such contradiction.[7] (*See* NOL No. 2, at 202–04, ECF No. 14) And even if Detective Donaldson had contradicted himself, counsel's decision not to probe further on this collateral issue was a reasonable tactical one.

Thus, the Court **OVERRULES** Petitioner's objections to the portion of the R&R addressing counsel's alleged failure to prepare, and **ADOPTS** the R&R as to this issue.

*(3) Failure to Present Arguments/Evidence*

Petitioner does not make any specific objections to the R&R on this basis for his ineffective assistance of counsel claim, but contends that his confession "covered all possibilities [about the exact location of the gun shot wound] since [he] couldn't pin it down to specifics," and that the version he confessed to "turned into an impossibility with the [medical examiner's] testimony." (Obj. 10, ECF No. 58) After a review of the medical examiner's testimony, the R&R concluded that it did "not actually conflict with the facts presented in Johnson's confession." (R&R 13, ECF No. 44) The Court agrees. The medical examiner testified that there was "no real way of saying" where the bullet came from in light of the fact that a "head can be moved in forward direction or backward direction, and that would change the orientation of the entrance into the head itself." (NOL No. 2, at 134, ECF No. 14)

Petitioner seemingly takes issue with the R&R's general holding that trial counsel may make "tactical decisions" as to trial strategy, including which arguments to pursue. (*See* Obj. 11–12, ECF No. 58) But it is well settled that "counsel receives considerable discretion in making tactical decisions during trial," especially where, as here, "counsel knew the facts stated in Johnson's recorded confession . . . ." (R&R 13, ECF No. 44 (citing *Duncan v. Ornoski*, 528 F.3d

---

[7] When Exhibit 13, an audiotape, was first introduced, Detective Donaldson stated that it "is a phone call to myself by Peter Johnson on May 23rd, 2006." (NOL No. 2, at 202, ECF No. 14) He later described Exhibit 14, a document, as "a transcript of my phone call." (*Id.* at 203) Contrary to Petitioner's assertions otherwise, the Court sees no contradiction in these two statements.

1222, 1235 (9th Cir. 2008)))  Thus, counsel's decision not to pursue the argument that the facts as Petitioner confessed to them were improbable is entitled to "considerable discretion."

For these reasons, and because the Court finds that the R&R is thorough, well reasoned, and contains no clear error on this basis, the Court **OVERRULES** Petitioner's objections and **ADOPTS** the R&R as to this issue.

*(4) Failure to Object to Prosecutor Leading Witnesses*

Petitioner objects to the R&R's finding that he had failed to "cite to specific instances where counsel permitted the prosecutor to lead witnesses," (R&R 14, ECF No. 44), and points to three "specific instances" he found objectionable: (1) the prosecutor's questioning of Detective Thwing, (2) prosecutor's questioning of Kitty Dean, and (3) the prosecutor's questioning of Detective Donaldson.  (Obj. 14, 16, ECF No. 58)

As to Detective Thwing, Petitioner's objections point not to objectionable leading questions, but to Petitioner's contention that if the prosecutor had not called for lunch at the time that he did, he would not have been able to confer with Detective Thwing regarding his testimony as to where Petitioner lived.  (Obj. 14, ECF No. 58 ("My contention is, that if [the prosecutor] didn't call for lunch right there & confer with Thwing, the [detective's] 1st 3 answers would have stood."))  But the trial transcript indicates that court recessed for lunch after the prosecutor's redirect of Detective Thwing had finished, and therefore the prosecutor could not have conferred with Detective Thwing on his answers, as Petitioner suggests.  (*See* NOL No. 2, at 168–72, 179–80, ECF No. 14)

As to Kitty Dean, Petitioner points to a single instance of a purportedly objectionable leading question: "Did you hear it from the neighborhood people or from Mr. Johnson?," (*Id.* at 148).  (Obj. 14, ECF No. 58)  To the extent this question was leading the witness—which the Court doubts—"Petitioner has . . . offered no evidence to show that the failure to object was not sound trial strategy." *Williams v. Harrington*, 2011 U.S. Dist. LEXIS 103551, at *49 (C.D. Cal. Aug. 10, 2011); *accord Strickland*, 466 U.S. at 689.  The record does not show that counsel was shirking his duty to monitor the prosecutor's witness examination and to object to impermissible questions; indeed, just prior to this question counsel objected, moved to strike, and moved to have

1  the jury admonished. That counsel chose not to object to each and every question posed by the
2  prosecutor does not make his representation ineffective. *See Williams*, 2011 U.S. Dist LEXIS
3  103551, at *51.

4  Finally, as to Detective Donaldson, Petitioner asserts that the prosecutor led him through
5  his testimony regarding the recorded telephone conversation, including why it began partially into
6  the phone call and what was discussed during the unrecorded portion. (Obj. 16, ECF No. 58)
7  Again, however, even assuming the prosecutor asked leading questions during this portion of
8  Detective Donaldson's testimony, Petitioner has not shown and nothing in the record suggests that
9  counsel's failure to object was anything other than sound trial strategy.

10  Accordingly, Petitioner's objections on this basis are **OVERRULED**, and the Court
11  **ADOPTS** the R&R as to this issue.

12  **2. Prosecutorial Misconduct**

13  Petitioner claims that the prosecutor committed misconduct by introducing perjured
14  testimony from witness Kitty Dean, and by repeatedly misstating the facts in front of the jury.
15  (Pet. 23–28, ECF No. 1) The clearly established law governing claims of prosecutorial
16  misconduct is "the narrow [standard] of due process." *Darden v. Wainwright*, 477 U.S. 168, 181
17  (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). The alleged misconduct
18  must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due
19  process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643).

20  *A. Summary of the R&R's Conclusions*

21  Magistrate Judge Skomal found Petitioner's claim for prosecutorial misconduct on the
22  basis of Kitty Dean's allegedly perjured testimony to be "without merit" because "the record in
23  this case does not establish that the prosecutor knew or should have known that Dean's testimony
24  was false." (R&R 15, ECF No. 44) The magistrate judge similarly found no basis for finding
25  prosecutorial misconduct based on the prosecutor's misstating of facts, such as Petitioner's address
26  at the time of the crime or by emphasizing Petitioner's "lucky guesses" about the details of the
27  murder. (*Id.* at 15–17)
28  //

### B. Objections to the R&R's Conclusions

*(1) Submission of Perjured Testimony*

Petitioner argues that Kitty Dean's testimony at trial differed from the information in the "police report," *see supra* note 6, and that the prosecutor must have read that report and therefore known that her testimony was perjured. (Obj. 16–17, ECF No. 58) "A prosecutor's knowing use of false testimony to get a conviction violates due process." *Jones v. Ryan*, No. 10-99006, slip op. 9373, 9388 (9th Cir. Aug. 16, 2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To prevail, Petitioner must demonstrate "'that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material.'" *Id.* (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (ellipsis in original)).

Just after the murder, the police contacted Kitty Dean, and, as noted in the Probation Officer's Report, she stated that "[s]he believed that Peter Johnson strongly disliked Robert [the murder victim] *but did not know a reason for the dislike*." (NOL No. 1, at 153, ECF No. 14 (emphasis added)) But at trial, Kitty Dean testified that she did know a reason for the dislike: "It was kind of over alcohol; that [Robert] drank more than his share or something, and that [Petitioner] didn't want much to do with him. . . . Peter said that he didn't want much to do with Robert because he didn't think he was a good guy." (NOL No. 2, at 149, ECF No. 14)  Simply because Kitty Dean recalled something at trial that she did not disclose to the police after the murder does not establish that her testimony at trial was false, or that the prosecutor knew that it was false, however. Thus, Petitioner has failed to carry his burden to show that the testimony was false and that the prosecutor knew that it was false. The Court therefore **OVERRULES** Petitioner's objection on this basis and **ADOPTS** the R&R as to this issue.

*(2) Misstating Facts*

Petitioner also argues that the prosecutor erred by manipulating and misstating the evidence presented during trial, and by emphasizing Petitioner's "lucky guesses" as to his confession of the murder. (Obj. 17–18, ECF No. 58)  He makes no specific objections to the R&R on this basis, but generally restates his arguments pertaining to the prosecutor's alleged

1  misconduct.  (*See id.*)

2  Petitioner again focuses on Detective Thwing's testimony regarding where Petitioner was
3  living at the time of the murder. (*Id.*)  Apparently, Petitioner contends that by "push[ing] &
4  push[ing] at the address issue" the prosecutor was "simply ben[d]ing the truth to suit his purpose."
5  (*Id.* at 17)  Where Petitioner was living in 1978 at the time of the murder was a contested issue at
6  trial, however, and there was nothing patently false about Detective Thwing's testimony in that
7  regard, or the prosecutor's line of questioning eliciting that testimony.  Thus, the Court cannot
8  conclude that the prosecutor's comments or questions on this subject "'so infected the trial with
9  unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181
10 (quoting *Donnelly*, 416 U.S. at 642).

11 Petitioner also asserts that the prosecutor's "sarcastic reference" to his confession as "lucky
12 guesses" resulted in "making those statement[s] [Petitioner] made correc[t], when in fact [he was]
13 way off base."  (Obj. 17, ECF No. 58)  Specifically, Petitioner asserts that anyone in the
14 neighborhood could have "presumed" what type of gun was used in the shooting, that the location
15 of the car was announced in the news and therefore his knowledge of this fact had "no luck to it,"
16 and that it was commonsense that the car was stopped when the shooting took place, not a lucky
17 guess.  (*Id.*)  The Court agrees with the R&R that "[a] review of Johnson's testimony on cross-
18 examination indicates that the prosecutor's references to 'lucky guesses' did not manipulate or
19 misstate the facts, nor did they deprive him of a fair trial."  (R&R 17, ECF No. 44)  The jury made
20 the ultimate determination whether Petitioner's confession was made up of "lucky guesses;"
21 information he had received from other sources, such as neighborhood gossip or the media; or
22 personal knowledge based on his participation in the crime.

23 For these reasons, and because the Court finds that the R&R is thorough, well reasoned,
24 and contains no clear error on this basis, the Court **OVERRULES** Petitioner's objections and
25 **ADOPTS** the R&R as to this issue.

26 **3. Exclusion of Exculpatory Evidence**

27 Finally, Petitioner argues that his right to a fair trial was violated because the trial court
28 excluded evidence of third-party culpability and other exculpatory evidence.  (Pet. 30–32, ECF

1  No. 1)  A defendant has a constitutional right to "a meaningful opportunity to present a complete
2  defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), but a court may nevertheless exclude
3  relevant, exculpatory evidence "if its probative value is substantially outweighed by" the risk of
4  undue delay, prejudice, or confusion, Cal. Evid. Code § 352.

### A. Summary of the R&R's Conclusions

Magistrate Judge Skomal held that "[t]he state court's decision to exclude the evidence of potential third party culpability was not unreasonable," and that Petitioner was therefore not entitled to habeas relief on this claim. (R&R 19, ECF No. 44)  In addition, though noting that Petitioner's allegation regarding exculpatory evidence of the .38 caliber gun was "barely intelligible," the magistrate judge found no indication that this evidence was offered and excluded, and concluded that Petitioner did not meet his burden to show a due process violation based on any purported evidentiary ruling. (*Id.*)

### B. Objections to the R&R's Conclusions

*(1) Third-Party Culpability*

Petitioner objects to the magistrate judge's determination that the trial court's exclusion of evidence of third-party culpability was not unreasonable. (Obj. 19, ECF No. 58)  Specifically, Petitioner contests the exclusion of evidence suggesting that another person had committed the murder, evidence that did "not fit in the context of [Petitioner's] false confession." (*Id.*)  As the trial court noted, (*see* NOL No. 2, at 58, ECF No. 14), under California law, "evidence of third party culpability must be capable of raising a reasonable doubt of the defendant's guilt," which requires "direct or circumstantial evidence linking the third person to the actual perpetration of the crime," *People v. Davis*, 896 P.2d 119, 137 (Cal. 1995) (internal quotation marks omitted).  To be entitled to federal habeas relief on the exclusion of this evidence, however, Petitioner must demonstrate that the trial court's decision "render[ed] the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977–78 (9th Cir. 1999); *see also Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993) ("There is no question that the defendant has the right to introduce evidence of third-party culpability. . . . The defendant's right to present evidence which may exonerate him, however, is not absolute and may have to bow to

accommodate other legitimate interests in the criminal trial process." (internal quotation marks omitted) (citations omitted)).

A review of the transcript of the motion hearing shows no actual evidence linking another person to the crime for which Petitioner was convicted. Instead, the defense sought to question witnesses about their opinions as to another individual who had first been suspected of the murder. (NOL No. 2, at 56, ECF No. 14 ("We may ask questions of witnesses regard[ing] their thoughts 28 years ago about an individual that was under suspicion.")  This type of testimony, even from the investigating detective, "simply affords a possible ground of suspicion against [a third] person," however, and is not "coupled with substantial evidence tending to directly connect that person with the actual commission of the offense." *Ignacio*, 10 F.3d at 615 (internal quotation marks omitted) (emphasis omitted). Thus, the Court **OVERRULES** Petitioner's objection on this basis and **ADOPTS** the R&R as to this issue.[8]

*(2) Evidence Regarding Frank Edwards Getting Rid of a .38 Caliber Gun*

Although Petitioner's objections contain a heading as to this portion of the R&R, the Court has trouble deciphering what, if anything, he is objecting to. (Obj. 19, ECF No. 58)  He states that trial counsel told him he was unable to present something as evidence, but the citation is to the Probation Officer's Report, which was not prepared until after the trial, and to page of that report that makes no reference to Frank Edwards or the .38 caliber gun. (*Id.* (citing NOL No. 1, at 153, ECF No. 14))  Having reviewed this portion of the R&R, the Court finds that the R&R is thorough, well reasoned, and contains no clear error. Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** the R&R as to this issue.

---

[8] The Probation Officer's Report highlights the lack of any direct or circumstantial evidence pertaining to a third-party's culpability:

> In May of 1980 San Diego Police received a teletype from the Boise Idaho Police Department. It advised that a Donald Allen Young was a possible participant in one or more homicides in California during the months of September and October 1978. One of those incidents involved the death of a young male adult whose body was allegedly located in the trunk of a vehicle in San Diego. Police then investigated Donald Young as a suspect in the murder of Robert Spencer *but were unable to develop any actual evidence that Young had murdered Spencer.* . . .

(NOL No. 1, at 153, ECF No. 14 (emphasis added))

### 4. Certificate of Appealability

The Court is obliged to determine whether a certificate of appealability should issue in this matter. A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petitioner's claims have been denied on their merits, as here, a petitioner can meet the threshold "substantial showing of the denial of a constitutional right," by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1024–25 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000); *Barefoot v. Estelle*, 463 U.S. 880 (1983)).

Here, no reasonable jurist would disagree with the Court's resolution of Petitioner's constitutional claims and denial of the writ. Evidence in the record supports the trial court's actions, and this suffices to meet due process requirements. Accordingly, the Court **DENIES** a certificate of appealability.

### CONCLUSION

For the reasons stated, the Court **ADOPTS** the R&R in full. Petitioner's petition for writ of habeas corpus is **DENIED**. A certificate of appealability is **DENIED**. This Order concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED**.

DATED: September 10, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge